IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **SHARON KILLMON, as Next Friend and Conservator of G.W. a Minor,** | **CASE NO.** 4:17-cv-00251 |
| **Plaintiffs,** | |
| **vs.** | **COMPLAINT AND JURY DEMAND** |
| **DOREL JUVENILE GROUP, INC., a Massachusetts corporation,** | |
| **Defendant.** | |

Plaintiff Sharon Killmon, as Next Friend and Conservator of G.W., a minor, files this Original Complaint and states as follows:

## PARTIES

1.      Plaintiff Sharon Killmon is a resident of Afton, Iowa and lives within the Southern District of Iowa, Central Division.

2.      Sharon Killmon is the grandmother, primary care-giver, court-appointed conservator, and legal guardian of G.W., a minor, who resides with her.

3.      Defendant, Dorel Juvenile Group, Inc. ("Dorel") is a Massachusetts corporation with its principal office located at 25 Forbes Blvd, Ste. 4, Foxboro, MA 02035.  This Defendant may be served through its registered agent, Corporation Service Company, 84 State Street, Boston MA 02109.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this controversy is between citizens of different states.  In addition, the amount in controversy is in

— 1 —

excess of $75,000.00 U.S.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

## BACKGROUND FACTS

6.      Plaintiff, G.W. is a minor child who was born on August 15, 2011.

7.      Before the subject collision described below, Plaintiff G.W.'s family purchased a Safety 1st "All in One" car seat (CC045-SNPG L#13B682875) ("subject car seat") for use with G.W. The subject car seat was manufactured in the spring of 2012. Dorel designed, marketed, manufactured, and sold the subject car seat.

8.      The Defendant, Dorel Juvenile Group, Inc., is one of the world's largest child safety seat manufacturers. Before the subject seat was designed or manufactured, Dorel knew that toddlers and young children are exposed to enhanced injury in a frontal collision if they are placed in a forward-facing car seat as opposed to a rear-facing car seat. This enhanced risk of injury is due, in part, to the large size of a young child's head in relation to their body. The bones of a young child's spinal are not completely ossified which renders the spinal column significantly more elastic than an adult's. The resulting elasticity of the pediatric spine creates an enhanced risk of spinal cord injury if the child's pelvis and torso are restrained but their head is propelled forward by the forces of a frontal collision when the child is in a forward-facing car seat. Long before the subject seat was designed or manufactured, Dorel was aware that frontal collisions are the most common crash mode in the United States. Dorel was also aware prior to the manufacture of the subject car seat that a child seat occupant is best protected by distributing crash forces over as large a portion of their body as possible and that a rear-facing car seat in a frontal collision allows a

child's head, neck, and back to ride down the crash with the support provided by the seat back. The enhanced injury risks described above exist for young children in forward-facing seats, including those restrained by a five-point harness. These risks are further enhanced if a young child is seated in a belt-positioning booster seat, which relies on the vehicle' lap and shoulder belt to restrain the child.

9.      The subject car seat was manufactured in the spring of 2012. Before that time, Dorel was fully aware of the significant risks posed to toddlers as described above. Dorel was also aware that the combination of forward-facing orientation with the use of a belt-positioning booster seat for toddlers and young children significantly increases the risk of severe injury or death.

10.      The subject model car seat, known as the "All-in-One," was on the market for many years before the subject seat was manufactured in the spring of 2012. While Dorel had updated its warnings and instructions on some newer model car seats with information regarding some of the risks described herein, Dorel chose not to update the warnings and instructions for the subject car seat. This decision to omit any warning of the dangers described herein was deliberate and made with conscious disregard for the safety of children. Dorel made the decision not to devote the financial resources required to update the warnings or instructions and Dorel continued to market subject model seat as a forward-facing belt-positioning booster for children as young as one year old. That decision was made by the highest levels of Dorel's management. In doing so, Dorel knowingly and needlessly exposed young children like G.W. to an unnecessary risk of serious injury or death.

11.      On February 8, 2014, G.W. was traveling in the family vehicle on Highway 92 in Madison County Iowa. G.W. was riding in the subject car seat which was being used as a belt-positioning booster. According to Dorel's instructions and warnings for the subject seat, G.W. was

of the appropriate height, weight, and age to use the seat as a belt-positioning booster. The subject seat was installed in the middle seat in the rear of the vehicle in a forward-facing position. G.W.'s father was driving the vehicle, and G.W.'s grandfather was riding in the front passenger seat. Another vehicle traveling the opposite direction crossed the center line and impacted the front of the Ward vehicle. G.W.'s father and grandfather sustained non-life-threatening injuries.

12.     However, during the impact G.W.'s head was thrust forward while his torso and pelvis were restrained by the vehicle's lap and shoulder belt in use with the belt-positioning booster seat. As a result, G.W.'s spinal cord was completely severed in the collision. G.W. will never walk under his own power again based on current medical science and treatment modalities. G.W. suffered an injury to his head and face, including a subdural hematoma and possible permanent brain injury.

## COUNT I – NEGLIGENCE

13.     Plaintiff repeats and re-alleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

14.     Dorel owed a duty to act as a reasonable and prudent child safety seat manufacturer when it designed, marketed, and sold the subject car seat. If Dorel failed to act as a reasonable and prudent manufacturer it would create a foreseeable risk of injury to children, including G.W.

15.     Dorel breached its duty and was negligent. Dorel was negligent in marketing the subject car seat for use with children G.W.'s age given the medical risks presented in a severe frontal collision. Dorel was also negligent in failing to adequately warn consumers of the risks posed to young children positioned in a forward-facing car seat as opposed to a rear-facing car seat. Dorel was negligent in failing to adequately warn consumers of the risks posed to young children when seated in belt-positioning boosters as opposed to a 5-point harness. Dorel was also

negligent when it marketed the subject seat and crafted the seat labels and instructions to encourage parents to use the seat as a belt-positioning booster for children as young as 1-year-old without informing parents of the extreme risks such a use would create in comparison to the use of a 5-point harness in a rear-facing orientation.

16.     Dorel's negligent acts and omissions alleged herein were a proximate cause of the incident made the basis of this lawsuit and Plaintiff's injuries and damages.

## COUNT II – DESIGN DEFECT

17.     Plaintiff repeats and re-alleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

18.     Dorel sold and distributed the subject car seat.

19.     Dorel was engaged in the business of selling and distributing child car seats, including the subject car seat.

20.     The subject car seat was in a defective condition at the time it left the Dorel's control, in one or more of the following ways:

(a)     it was designed for use as a forward-facing child car seat for children that were too young to face forward safely; and,

(b)     it was designed for use as a forward-facing belt-positioning booster for children that were too young to use a forward-facing belt-positioning booster seat safely.

21.     A reasonable alternative safer design could have been practically adopted at the time of sale or distribution.

22.     The alternative design would have reduced or avoided the foreseeable risks of harm posed by the subject car seat.

23.     The omission of the alternative design renders the subject car seat not reasonably safe.

24.    The alternative design would have reduced or prevented the plaintiff's harm.

25.    The defect was a proximate and/or producing cause of the damages alleged herein.

### COUNT III – MARKETING DEFECT – INADEQUATE WARNINGS OR INSTRUCTIONS

26.    Plaintiff adopts each paragraph set forth above as if fully set forth here.

27.    Dorel sold and distributed the subject car seat.

28.    Dorel was engaged in the business of selling the subject model child car seat.

29.    The foreseeable risks of harm posed by the subject car seat could have been reduced or avoided by the provision of reasonable instructions or warnings, in one or more of the following ways:

(a)    the subject car seat could have been accompanied by adequate and reasonable warnings of the dangers posed to toddlers associated with riding in a forward-facing car seat as opposed to rear-facing;

(b)    the subject car seat could have been accompanied by adequate and reasonable warnings of the dangers posed to toddlers and young children associated with riding in a forward-facing belt-positioning booster seat; and,

(c)    the subject car seat could have been accompanied by adequate and reasonable warnings, packaging, and labeling informing parents of the need to continue to use the seat as a rear-facing, five-point harness for as long as possible.

30.    The omission of these instruction(s) or warning(s) renders the subject car seat not reasonably safe.

31.    The risk to be addressed by these instruction(s) or warning(s) was not obvious to, or generally known by, foreseeable product users.

32.    The omission of these instruction(s) and warning(s) was a proximate and/or producing cause of the damages alleged herein.

## COUNT IV – ENHANCED INJURY (CRASHWORTHINESS)

33. Plaintiff adopts each paragraph set forth above as if fully set forth here.

34. Dorel designed the subject car seat.

35. Dorel was engaged in the business of designing child car seats.

36. The subject car seat was in a defective condition at the time it left Dorel's control in one or more of the following ways:

    (a)    it was designed for use as a forward-facing child car seat for children that were too young to face forward safely;

    (b)    it was designed for use as a forward-facing belt-positioning booster for children that were too young to use a forward-facing belt-positioning booster seat safely;

    (c)    it should have been accompanied by adequate and reasonable warnings of the dangers posed to toddlers associated with riding in a forward-facing car seat as opposed to rear-facing;

    (d)    it should have been accompanied by adequate and reasonable warnings of the dangers posed to toddlers and young children associated with riding in a forward-facing belt-positioning booster seat; and,

    (e)    it should have been accompanied by adequate and reasonable warnings, packaging, and labeling informing parents of the need to continue to use the seat as a rear-facing, five-point harness for as long as possible.

37. The subject car seat was used in an intended manner or in a manner reasonably foreseeable by Dorel.

38. The subject car seat was expected to and did reach Plaintiff without substantial change in its condition.

39. An alternative, practicable, safer design was available.

40. The nature and extent of the injuries which the minor, G.W., would have incurred if the alternative design had been used would not have included paralysis or his serious and debilitating injuries.

41.     The defective design was a proximate and/or producing cause of the enhanced injuries.

## COUNT V – GROSS NEGLIGENCE CAUSE OF ACTION

42.     Plaintiff repeats and re-alleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

43.     Dorel's conduct complained of above constitutes gross negligence. Dorel's conduct, when viewed objectively from the standpoint of the actor at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Dorel's conduct constitutes willful and wanton disregard for the rights and safety of young children, including Plaintiff G.W. Moreover, Dorel's conduct was specifically directed at Plaintiff G.W.

44.     Further, Dorel, by and through its employees and agents, had actual, subjective awareness of the risk but proceeded with conscious indifference to the rights, safety, or welfare of others.

## COUNT VI – DAMAGES

45.     As a result of the allegations complained of above, Plaintiff G.W., a minor, has suffered catastrophic injuries rendering him partially paralyzed. His injuries have required significant medical treatment, including a tracheotomy and ongoing rehabilitation therapy. Plaintiff G.W. has suffered physical pain and suffering, mental anguish, disfigurement, loss of earning capacity, physical impairment, loss of consortium, pecuniary loss, and incurred medical expenses. Plaintiff G.W. suffered each of these elements of damages in the past and likely will continue to suffer such damages in the future.

46.     As a result of the allegations complained of above, Plaintiff Sharon Killmon suffered serious mental anguish associated with the serious injuries suffered by G.W. Moreover, Sharon Killmon incurred and continues to incur medical expenses associated with G.W.'s injuries. Sharon Killmon has suffered each of these elements of damages in the past and likely will continue to suffer such damages in the future.

47.     As a result of the gross negligence alleged herein, exemplary damages are recoverable. Plaintiff has satisfied each element required to obtain exemplary damages. Plaintiff prays that the Court award exemplary damages.

48.     Plaintiff pray for the maximum allowable pre-judgment and post-judgment interest on any damages awarded and pray to recover all court costs associated with this action

## JURY DEMAND

49.     Plaintiff requests a jury be empaneled to determine the factual disputes in this matter.

## PRAYER

50.     Plaintiff prays that upon a trial of this matter, Plaintiff receives a final judgment for all the damages, costs, and interest alleged herein. Plaintiff seeks any and all remedies Plaintiff is entitled to in law or in equity.

Respectfully Submitted,

/s/ *J. Barton Goplerud*
J. Barton Goplerud, AT0002983
Brandon M. Bohlman, AT0011668
SHINDLER, ANDERSON, GOPLERUD &
WEESE, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265-5749
Telephone:     (515) 223-4567
Facsimile:     (515) 223-8887
Email:         goplerud@sagwlaw.com
Email:         bohlman@sagwlaw.com


Jeffery T. Embry
Subject to *pro hac vice* admission
George Cowden IV
Subject to *pro hac vice* admission
Hossley & Embry, LLP
515 S. Vine Ave.
Tyler, Texas 75702
Ph. (903) 526-1772
Fax (903) 526-1773
Email:         jeff@hossleyembry.com
Email:         george@hossleyembry.com


ATTORNEYS FOR PLAINTIFFS